# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**WESTGATE RESORTS, LTD., et al.,**

    **Plaintiffs,**

**v.**                                                                   Case No: 6:17-cv-1063-Orl-31DCI

**CASTLE LAW GROUP, P.C., JUDSON PHILLIPS, CASTLE MARKETING GROUP, LLC, CASTLE VENTURE GROUP, LLC, RESORT RELIEF, LLC, WILLIAM MICHAEL KEEVER, KEVIN HANSON and SEAN AUSTIN,**

    **Defendants.**

## ORDER

This matter comes before the Court on two motions to dismiss: the first (Doc. 66) filed by Defendants Castle Law Group, P.C. (henceforth, "Castle Law") and Judson Phillips ("Phillips"), and the other (Doc. 67) filed by Defendant Sean Austin ("Austin"). In resolving these motions, the Court has also considered the response in opposition (Doc. 74) filed by the Plaintiffs.

### I. Background

According to the allegations of the Second Amended Complaint (Doc. 65), which are accepted in pertinent part as true for purposes of resolving the instant motion, the Plaintiffs are a group of 11 timeshare developers (the "Westgate Developers") and 15 timeshare owners' associations (the "Associations"). Each Plaintiff has "Westgate" as part of its name. Anyone who purchases a timeshare interest from one of the Westgate Developers (henceforth, "Westgate Owners") signs a contract agreeing to pay maintenance fees and property taxes to one of the

Associations; some Westgate Owners also obtain financing from a Westgate Developer, in which case the Westgate Developer holds a promissory note. (Doc. 65 at 15-16).

Defendant Castle Venture Group, LLC ("Castle Venture") funds Defendant Castle Marketing Group, LLC ("Castle Marketing"). (Doc. 65 at 18). Along with Defendant Resort Relief, LLC ("Resort Relief"), Castle Marketing solicits timeshare owners, including Westgate Owners, who wish to get out of their contracts. (Doc. 65 at 18-19). Such owners are directed to retain Defendant Castle Law.[1] (Doc. 65 at 19). As one step in the process of getting out of their contracts, Westgate Owners who retain Castle Law are encouraged to stop paying maintenance fees and taxes and to stop making payments on any promissory note. (Doc. 65 at 24-25).

The instant case was filed on June 12, 2017. (Doc. 1). On August 7, 2017, the Plaintiffs filed their Second Amended Complaint (Doc. 65), which consists of six counts: tortious interference with existing contracts (Count I); tortious interference with advantageous business relationships (Count II); civil conspiracy (Count III); violation of Section 721.121, Florida Statutes (Count IV); violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* ("FDUTPA") (Count V); and temporary and permanent injunctive relief (Count VI). The statutory claim in Count IV is asserted against Resort Relief, Hansen and Austin. The remaining counts are asserted against all of the Defendants.

By way of the instant motions, Austin seeks dismissal of all six counts, while Castle Law and Phillips seek dismissal of the five counts asserted against them. Because the arguments raised in both motions are, for the most part, identical, they will be addressed together.

---

[1] The four individual defendants in this matter are associated with the four business entity (P.C./LLC) defendants. Defendant Phillips is the sole owner of Castle Law; Defendant Austin is the sole member of Castle Marketing; Defendant William Keever is the sole member of Castle Venture; and Defendant Kevin Hanson is the sole member of Resort Relief. (Doc. 65 at 12-13).

## II. Legal Standards

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir.1984). In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988). The Court must also limit its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1966, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. at 1949 (internal citations and quotations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged –

but it has not 'show[n]' – 'that the plaintiff is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

**III. Analysis**

**A. Count I – tortious interference with contract**

In the first count, the Plaintiffs allege that the Defendants tortiously interfered with the contracts between the Plaintiffs and the Westgate Owners. Under Florida law, the tort of contractual interference occurs when: (1) a contract exists; (2) a third party has knowledge of the contract; (3) the third party intentionally interferes with a party's rights under the contract; (4) there is no justification or privilege for the interference; and (5) there are damages. *Mariscotti v. Merco Group At Akoya, Inc.*, 917 So. 2d 890, 892 (Fla. 3d DCA 2005).

Castle Law, Phillips, and Austin (collectively, the "Movants") do not challenge the existence of the first, fourth, and fifth elements here. Instead, they seek dismissal of Count I on the grounds that, as agents of the Westgate Owners, they were not third parties to any contracts between the Westgate Owners and the Plaintiffs and therefore could not be liable for tortious interference. Generally speaking, one cannot tortiously interfere with a contract to which it is a party. *Ethyl Corp. v. Balter*, 386 So.2d 1220, 1224 (Fla. 3d DCA 1980). Consequently, an agent generally cannot be held liable for tortiously interfering with the contract of its principal because the agent is privileged to act in the best interest of the principal. *Sloan v. Sax*, 505 So.2d 526, 528 (Fla. 3d DCA 1987).

Based on the allegations of the Second Amended Complaint, the Movants were agents of the Westgate Owners. However, an agent's "privilege to interfere" with the contracts of its principal is not absolute. *Id.* at 528. The privilege afforded to an agent who gives honest advice that it is in his principal's best interest to breach an existing relationship is not available when an

agent acts solely with ulterior purposes and the advice is not in the principal's best interest. *Scussel v. Balter*, 386 So. 2d 1227, 1228-29 (Fla. 3d DCA 1980). In this case, the Plaintiffs allege that the recommendations to breach were made "for purely selfish and mercenary reasons so as to earn and retain [a] large pre-paid retainer" rather than to aid the Westgate Owners in successfully ending their contracts with the Plaintiffs. (Doc. 60 at 29-30). If the Plaintiffs can show that the Movants acted solely with this ulterior motive, their status as agents of the Westgate Owners would not protect them from liability for tortious interference with contract. The motions will be denied as to Count I.

### B. Count II – tortious interference with advantageous relationships

In their second count, the Plaintiffs contend that the Defendants interfered with the business relationships between themselves and the Westgate Owners, which might have resulted in additional purchases in the future. The Plaintiffs note that Westgate Owners with existing contracts "have equity interests which may be used as credits toward the purchase of an upgraded timeshare interest" such as a larger unit or a "more premium" season. (Doc. 65 at 31).

Under Florida law, the elements of tortious interference with a business relationship are: (1) the existence of a business relationship, even if not evinced in a formal written agreement; (2) that the defendant knew of the relationship; (3) the defendant intentionally and unjustifiedly interfered with the relationship; and (4) damage to the plaintiff as a result of the breach of the relationship. *Ethan Allen, Inc. v. Georgetown Manor*, Inc., 647 So.2d 812, 814 (Fla.1994). The Movants seek dismissal of this count on the same basis as Count I – *i.e.*, that as agents they were not third parties to the relationship between the Plaintiffs and the Westgate Owners. That argument fails with regard to Count II for the same reason that it failed in regard to Count I.

However, under Florida law, a mere offer to sell does not give rise to sufficient legal rights to support a claim of intentional interference. *Lake Gateway Motor Inn, Inc. v. Matt's Sunshine Gift Shops, Inc.*, 361 So. 2d 769, 772 (Fla. 4th DCA 1978). An action for intentional interference with a business relationship will lie "if the parties' understanding would have been completed if the defendant had not interfered." *Charles Wallace Co. v. Alternative Copier Concepts, Inc.*, 583 So. 2d 396, 397 (Fla. 2d DCA 1991). In this case, the Plaintiffs have alleged that the Westgate Owners had "equity interests" that could have been used to upgrade their timeshares. Taken at face value, this does not even rise to the level of an offer to sell. It appears to be merely a statement that the Westgate Owners could have made another purchase from one of the Westgate Developers, if they wished. Even if one were to characterize this allegation to mean that the Westgate Developers had a standing offer to sell upgrades to existing timeshare owners, such an offer is not a "business relationship" as required to support a claim for intentional interference with advantageous business relationships. Count II will therefore be dismissed without prejudice as to the Movants.

### C. Count III – civil conspiracy

A civil conspiracy claim requires: (1) an agreement between two or more parties (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the doing of some overt act in furtherance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy. *Charles v. Florida Foreclosure Placement Center, LLC*, 988 So. 2d 1157, 1159-60 (Fla. 3d DCA 2008). The Movants argue that all of the substantive counts in the Second Amended Complaint are due to be dismissed and therefore the second element is not present here. As noted above, the Movants have not prevailed in obtaining dismissal of Count I. Therefore the Movants' argument fails as to Count III.

## D. Count IV – violation of Florida Statute § 721.121

In Count IV, the Plaintiffs allege that Resort Relief, Hanson, and Austin violated a recordkeeping obligation under Florida's Vacation Plan and Timesharing Act ("FVPTA"), Fla. Stat. §§ 721.02-721.98. The Plaintiffs allege that Austin is a "lead dealer," which is defined by the FVPTA in pertinent part as

> any person who sells or otherwise provides a resale service provider or any other person with personal contact information for five or more owners of timeshare interests. In the event a lead dealer is not a natural person, the term shall also include the natural person providing personal contact information to a resale service provider or other person on behalf of the lead dealer entity.

Fla. Stat. § 721.05(42). The Act defines "personal contact information" as

> any information that can be used to contact the owner of a specific timeshare interest, including, but not limited to, the owner's name, address, telephone number, and e-mail address.

Fla. Stat. § 721.05(43). The Act requires that lead dealers maintain the following records for five years after obtaining personal contact information:

> (a) The name, home address, work address, home telephone number, work telephone number, and cellular telephone number of the lead dealer from which the personal contact information was obtained.
>
> (b) A copy of a current government-issued photographic identification for the lead dealer from which the personal contact information was obtained, such as a driver license, passport, or military identification card.
>
> (c) The date, time, and place of the transaction at which the personal contact information was obtained, along with the amount of consideration paid and a signed receipt from the lead dealer or copy of a canceled check.
>
> (d) A copy of all pieces of personal contact information obtained in the exact form and media in which they were received.
>
> (e) If personal contact information was directly researched and assembled by the resale service provider or lead dealer and not obtained from another lead dealer, a complete written description of

> the sources from which personal contact information was obtained, the methodologies used for researching and assembling it, the items set forth in paragraphs (a) and (b) for the individuals who performed the work, and the date such work was done.

Fla. Stat. § 721.121(1).

Any use by a lead dealer of personal contact information that was wrongfully obtained is to be considered "wrongful use" by that entity. Fla. Stat. § 721.121(3). In any civil action relating to the wrongful possession or wrongful use of personal contact information by a resale service provider or lead dealer, any failure to produce the records required by Section 721.121 results in a presumption that the personal contact information was wrongfully obtained. Fla. Stat. § 721.121(2). Any party who establishes that personal contact information was wrongfully obtained or used "with respect to owners of a timeshare plan or members of an exchange program" can recover $1,000 for each owner whose information was wrongfully obtained or used. Fla. Stat. § 721.121(3).[2]

Austin argues that there are no factual allegations in the Second Amended Complaint that show him to be a "lead dealer" and therefore subject to the recordkeeping requirements of Section 721.121. (Doc. 67 at 8). As to this argument, Austin is correct. The Plaintiffs allege that Austin is the "true owner" of Resort Relief. (Doc. 65 at 19) They also allege that Resort Relief compiles timeshare owners' personal contact information and provides it to Castle Law. (Doc. 65 at 35). But the Plaintiffs never assert that Austin himself ever provided personal contact

---

[2] It is not clear (a) that the instant case can properly be considered a "civil action relating to the wrongful possession or wrongful use of personal contact information" so as to make Austin's recordkeeping a matter of judicial concern, or (b) that, if so, the Plaintiffs are the proper parties to bring this type of claim. Neither side has addressed these issues in their briefs, and there are very few published opinions dealing with this section of the FVPTA. For purposes of resolving the instant motion, the Court will assume without deciding that the Plaintiffs can properly bring such a claim here.

information to anyone, either individually or on behalf of Resort Relief, so as to qualify as a lead dealer.[3] Count IV will therefore be dismissed without prejudice as to Austin.

### E. Count V – violation of FDUTPA

The Plaintiffs allege in Count V that the Defendants violated The Florida Deceptive and Unfair Trade Practices Act by (1) soliciting the Westgate Owners through ads that deceived them into thinking that they could unilaterally cancel their timeshare interests; (2) by misrepresenting to the Westgate Owners that Castle Law could legally represent them in Florida courts; and (3) and by falsely informing clients who were Westgate Owners that their timeshare matters had been resolved even though they had not been. (Doc. 65 at 38). FDUTPA provides in pertinent part that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. § 501.204(1). A claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach County, Inc.*, 169 So. 3d 164, 167 (Fla. 4th DCA 2015).

The Movants argue that Count V fails to state a claim because the Plaintiffs are not consumers who were damaged by these alleged misrepresentations. (Doc. 61 at 5-6). The Plaintiffs respond that the statute's protections are not limited to consumers. (Doc. 69 at 16-18). While true, this misses the point. The misrepresentations set forth in the Second Amended

---

[3] Austin also argues that the Plaintiffs did not state a claim because there are no factual allegations that he failed to keep proper records. However, the Plaintiffs allege on information and belief that Resort Relief, Hanson, and Austin failed to maintain records as required under Fla. Stat. § 721.121. (Doc. 65 at 36). Pleading based on information and belief sometimes requires supporting factual allegations, such as in fraud cases where the information at issue is "peculiarly within the defendant's knowledge or control." *Hill v. Morehouse Medical Associates, Inc.*, No. 02-14429, 2003 WL 22019936, at *4 (11th Cir. Aug. 15, 2003). In other cases, however, pleading based on information and belief is generally permitted. 5 Charles Alan Wright et al., *Federal Practice & Procedure* § 1224 (3d ed.).

Complaint would have caused harm, if at all, to the consumers that they targeted – the Westgate Owners, who were (allegedly) solicited and retained under false pretenses – rather than the Plaintiffs. The motions will be granted as to Count V.

### F. Count VI – injunctive relief

Count VI is solely a claim for "temporary and permanent injunctive relief". (Doc. 65 at 40). Injunctive relief is a remedy, not a cause of action. *See*, *e.g.*, *Klay v. United Healthgroup, Inc.*, 376 F. 3d 1092, 1097-98 (11th Cir. 2004). Count VI will be dismissed.

### IV. Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the motions to dismiss filed by Defendants Castle Law Group, P.C. and Judson Phillips (Doc. 66) and by Defendant Sean Austin (Doc. 67) are **GRANTED IN PART AND DENIED IN PART**, as set forth above. Counts II and V are dismissed without prejudice as to the Movants. Count IV is dismissed without prejudice as to Austin. Count VI is dismissed. In all other respects, the motions are **DENIED**. Should the Plaintiffs wish to file an amended pleading, they must do so on or before January 2, 2018.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on December 20, 2017.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party