# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**WESTGATE RESORTS, LTD., et. al,**

      **Plaintiffs,**

**v.**                      **Case No:  6:17-cv-1063-Orl-31DCI**

**CASTLE LAW GROUP, P.C., JUDSON
PHILLIPS, CASTLE MARKETING
GROUP, LLC, RESORT RELIEF, LLC
and KEVIN HANSON,**

      **Defendants.**

---

## REPORT AND RECOMMENDATION

    This cause comes before the Court for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **MOTION FOR ENTRY OF DEFAULT FINAL JUDGMENT AGAINST CASTLE MARKETING GROUP, LLC, RESORT RELIEF, LLC, AND KEVIN HANSON (Doc. 264)** |
| **FILED:** | **April 16, 2019** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part**.

## I.    Background

    On June 12, 2017, Plaintiffs filed a complaint against Defendants alleging numerous causes of action stemming from what Plaintiffs describe as a campaign of false advertising meant to induce timeshare owners into breaching their timeshare agreements with Plaintiffs.  *See* Doc. 1. Since that time, Plaintiffs have filed several amended complaints, culminating in the Fourth Amended Complaint that Plaintiffs filed on July 11, 2018.  Doc. 215 (the Complaint).  In the

Complaint, Plaintiffs alleged five causes of action: (1) Tortious Interference with Existing Contracts; (2) Civil Conspiracy; (3) Violation of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA); (4) False Advertising and Unfair Competition Under the Lanham Act; and (5) Contributory False Advertising and Unfair Competition Under the Lanham Act. Doc. 215. Castle Marketing Group, LLC (Castle Marketing) is a named Defendant in Counts 1, 2, 3, and 5. Resort Relief, LLC (Resort Relief) and Kevin Hanson (Hanson) are named Defendants in Counts 1 through 4.

To date, this case has been resolved as to all Defendants with the exception of Castle Marketing, Resort Relief, and Hanson. *See* Docs. 227; 251; 258-1; 264 at 2. Castle Marketing, Resort Relief, and Hanson are all in default. Docs. 157; 241; 256. Plaintiffs now seek the entry of default final judgment against these Defendants. Docs. 264 (the Motion); 265; 266.

## II.      Standard of Review

The Federal Rules of Civil Procedure establish a two-step process for obtaining default judgment. First, when a party against whom a judgment for affirmative relief is sought fails to plead or otherwise defend as provided by the Federal Rules of Civil Procedure, and that fact is made to appear by affidavit or otherwise, the Clerk enters default. Fed. R. Civ. P. 55(a). Second, after obtaining clerk's default, the plaintiff must move for default judgment. Fed. R. Civ. P. 55(b). Before entering default judgment, the court must ensure that it has jurisdiction over the claims and parties, and that the well-pled factual allegations of the complaint, which are assumed to be true, adequately state a claim for which relief may be granted. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[1]

---

[1] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). To state a plausible claim for relief, a plaintiff must go beyond merely pleading the "sheer possibility" of unlawful activity by a defendant and offer "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). If a plaintiff fails to meet this pleading standard, then the plaintiff will not be entitled to default judgment.

If the plaintiff is entitled to default judgment, then the court must consider whether the plaintiff is entitled to the relief requested in the motion for default judgment. If the plaintiff seeks damages, the plaintiff bears the burden of demonstrating entitlement to recover the amount of damages sought in the motion for default judgment. *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008). Unlike well-pled allegations of fact, allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages. *Id*. (citing *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999)). Therefore, even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters[.]" *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects a basis for an award of

damages).  Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a liquidated sum or one capable of mathematical calculation, the law requires the district court to hold an evidentiary hearing to fix the amount of damages.  *See Adolph Coors*, 777 F.2d at 1543-44.  However, no hearing is needed "when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages."  *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *see also Wallace*, 247 F.R.D. at 681 ("a hearing is not necessary if sufficient evidence is submitted to support the request for damages").

### III.  Analysis

#### A.  Subject Matter Jurisdiction

Plaintiffs allege that the Court has diversity jurisdiction over this case.  Doc. 264 at 6-7.  A federal court has diversity jurisdiction over civil actions where there is complete diversity of citizenship among the opposing parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  28 U.S.C. § 1332(a).  Upon review of the Complaint, the Court finds that Plaintiffs have sufficiently demonstrated that the parties are completely diverse and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  Doc. 215 at 4-13.  Therefore, the undersigned finds that the Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

#### B.  Personal Jurisdiction

The undersigned finds that the Court has personal jurisdiction over Resort Relief and Hanson because Resort Relief and Hanson appeared in this action through counsel and filed a motion to dismiss the third amended complaint without timely raising a defense of lack of personal

- 4 -

jurisdiction.[2]  *See* Doc. 109; *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990) (explaining that "[a] party that fails to raise a defense of lack of personal jurisdiction at the appropriate time is deemed to have conferred personal jurisdiction on the court by consent.").

With respect to Castle Marketing, the undersigned finds that Plaintiffs failed to establish the existence of personal jurisdiction.  The undersigned will issue a separate order discussing the reasons behind that finding and denying without prejudice the Motion to the extent it seeks default final judgment against Castle Marketing.

### C.  Default

Resort Relief and Hanson initially appeared in this action on October 17, 2017 and actively participated in this litigation.  *See, e.g.*, Docs. 68, 75, 104, 109, 118, 135.  On May 22, 2018, attorney David A. Wilson filed a notice of appearance on behalf of Resort Relief and Hanson.[3] Doc. 202.  On July 11, 2018, Plaintiffs filed the operative Complaint in this matter.  Doc. 215. Neither Resort Relief nor Hanson responded to that Complaint.

On September 12, 2018, counsel for Resort Relief and Hanson filed a motion to withdraw as counsel that the Court granted.  Docs. 229; 234.  The Court gave Resort Relief until October 19, 2018 to obtain new counsel.  Doc. 234 at 3.  The Court specifically cautioned Resort Relief that if no counsel appeared on its behalf by that date, then "the Clerk may enter default following the submission of an appropriate motion by Plaintiffs."  *Id.*  No counsel has since appeared on behalf of Resort Relief.  In light of Resort Relief's failure to obtain counsel, and in light of Hanson's failure to respond to the Complaint, Plaintiffs moved for and obtained clerk's defaults

---

[2] Neither Resort Relief nor Hanson responded to the operative Complaint, i.e. the Fourth Amended Complaint.

[3] Resort Relief's and Hanson's previous attorneys had withdrawn.  Docs. 159; 160; 169; 175.

against Resort Relief and Hanson.  Docs. 239; 241; 254; 256.  Given the foregoing, the undersigned

finds that the Clerk properly entered default against Resort Relief and Hanson.

**D.  Liability**

**a.  Count 1 – Tortious Interference with Existing Contracts**

Under Florida law, the tort of contractual interference occurs when (1) a contract exists;

(2) a third party has knowledge of the contract; (3) the third party intentionally interferes with a

party's rights under the contract; (4) there is no justification or privilege for the interference; and

(5) there are damages.  Doc. 89 at 4 (citing *Mariscotti v. Merco Group At Akoya, Inc.*, 917 So. 2d

890, 892 (Fla. 3d DCA 2005)).  Plaintiffs argue that the well-pled factual allegations in the

Complaint establish that Resort Relief tortiously interfered with their existing contracts.  Doc. 264

at 8-9.  The undersigned agrees.

In the Complaint, Plaintiffs allege that they have valid and legally enforceable contracts

with their clients related to Plaintiffs' timeshare units, and that Resort Relief had knowledge of

these contracts.  Doc. 215 at ¶¶ 128-29.  Plaintiffs also allege that Resort Relief intentionally used

false and misleading advertising to induce Plaintiffs' clients into paying large upfront fees to retain

Castle Law Group, P.C. (Castle Law) for the purpose of exiting their timeshare agreements with

Plaintiffs.  *Id*. at ¶¶ 50, 53-55, 65, 69-71, 84-86, 95-103, 105-06, 112, 117, 121, 130, 132, 134,

137-39.  For instance, Plaintiffs allege that Resort Relief stated on its website that "[w]e are

successful over 93 percent of the time."  *Id*. at ¶ 69; *see also* Doc. 215 at ¶ 96 (discussing other

false statements made by Resort Relief).  But, contrary to Resort Relief's representations, Castle

Law was largely unsuccessful in its efforts to get Plaintiffs' clients released from their timeshare

contracts and Resort Relief's statements boasting of Castle Law's significant successes were false

and intentionally misleading.  Doc. 215 at ¶¶ 87, 91, 112, 117.  Further, Plaintiffs allege that in its

efforts to get Plaintiffs' clients released from their timeshare contracts, Castle Law, without prior investigation or any legitimate grounds for doing so, instructed Plaintiffs' clients to stop making their mortgage, maintenance, and tax payments owed to Plaintiffs.  *Id*. at ¶¶ 70, 105, 119, 135. Plaintiffs allege that as a result of Resort Relief's actions, Plaintiffs' clients have terminated, or have sought to terminate, their contractual relationships with Plaintiffs, thereby damaging Plaintiffs.  *Id*. at ¶¶ 119-21, 123, 140, 142.  Plaintiffs allege that Resort Relief did not have any justification or privilege for the interference with Plaintiffs' contractual relationships.  *Id*. at ¶¶ 121-22, 138, 141.

With regard to Hanson, Plaintiffs allege that Hanson was the sole member, owner, and founder of Resort Relief.  *Id*. at ¶ 49.  Under Florida law, "if an officer, director, or agent commits or participates in a tort, whether or not his actions are by authority of the corporation or in furtherance of the corporate business, that individual will be liable to third persons injured by his actions, regardless of whether liability attaches to the corporation for the tort."  *Special Purpose Accounts Receivable Co-p Corp. v. Prime One Capital Co.*, 125 F. Supp. 2d 1093, 1104-05 (S.D. Fla. 2000) (citation omitted).  Here, Plaintiffs allege that Hanson created Resort Relief to use as subterfuge for the scam described *supra*, used Resort Relief to interfere with Plaintiffs' contractual relationships, personally and individually concocted the scheme described *supra* and personally and individually implemented and directed the implementation of the scheme, and acted in bad faith for purely selfish and mercenary reasons with the knowledge and purpose to injure Plaintiffs. Doc. 215 at ¶¶ 71, 73-74, 131, 136, 139.

Accepting the foregoing well-pled factual allegations as true solely for the purposes of this Motion, the undersigned finds that Resort Relief and Hanson tortiously interfered with Plaintiffs'

contractual relationships.  Therefore, the undersigned finds the Plaintiffs are entitled to default final judgment against Resort Relief and Hanson as to Count 1 of the Complaint.

### b.  Count 2 – Civil Conspiracy

A civil conspiracy claim requires: (1) an agreement between two or more parties, (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the doing of some overt act in furtherance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy.  Doc. 89 at 6 (citing *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1159-60 (Fla. 3d DCA 2008)).  Plaintiffs argue that the well-pled factual allegations in the Complaint establish that an agreement existed between Resort Relief, Hanson, and the other Defendants to unlawfully interfere with Plaintiffs' contractual relationships.  Doc. 264 at 9-10. The undersigned agrees.

In the Complaint, Plaintiffs allege that Resort Relief, Hanson, and the other Defendants conspired to interfere with Plaintiffs' contractual relationships.   Doc. 215 at ¶¶ 145-49. Specifically, as it pertains to Resort Relief, Plaintiffs allege that Castle Marketing, on behalf of Castle Law, retained Resort Relief to intentionally use false and misleading advertising as part of a scheme to induce Plaintiffs' clients into paying large upfront fees to retain Castle Law for the purpose of exiting the clients' timeshare agreements with Plaintiffs.  *Id*. at ¶¶ 50, 53-55, 65, 69-71, 84-86, 95-103, 105-06, 112, 117, 121, 148, 151.  Then, as previously discussed, Castle Law, without prior investigation or any legitimate grounds for doing so, instructed Plaintiffs' clients to stop making their mortgage, maintenance, and tax payments owed to Plaintiffs.  *Id*. at ¶¶ 70, 105, 119.  Plaintiffs allege that as a result of Resort Relief's actions, Plaintiffs' clients have terminated, or have sought to terminate, their contractual relationships with Plaintiffs, thereby damaging Plaintiffs.  *Id*. at ¶¶ 119-21, 123, 150.  Plaintiffs allege that Defendants did not have any

justification or privilege for the interference with Plaintiffs' contractual relationships. *Id*. at ¶¶ 121-22, 151.

In addition, as the undersigned previously discussed, Plaintiffs allege that Hanson created Resort Relief to use as subterfuge for the scam described *supra*, used Resort Relief to interfere with Plaintiffs' contractual relationships, actively participated in and controlled Resort Relief's activities, and acted maliciously and purposefully. Doc. 215 at ¶¶ 71, 73-74, 148-49.

Accepting the foregoing well-pled factual allegations as true solely for the purposes of this Motion, the undersigned finds that Resort Relief and Hanson engaged in a conspiracy to tortiously interfere with Plaintiffs' contractual relationships. Therefore, the undersigned finds the Plaintiffs are entitled default final judgment against Resort Relief and Hanson as to Count 2 of the Complaint.

### c. Count 3 – Violation of Florida's Deceptive and Unfair Trade Practices Act

FDUTPA provides, in pertinent part, that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." *Orange Lake Country Club, Inc. v. Castle Law Group, P.C.*, Case No. 6:17-cv-1044-Orl-31DCI, Doc. 177 at 9 (quoting Fla. Stat. § 501.204(1)). "Trade or commerce" is defined as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." *Id*. (quoting Fla. Stat. § 501.203(8)). A claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Id*. (citing *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 167 (Fla. 4th DCA 2015)). Plaintiffs argue that the well-pled factual allegations in the Complaint establish that Resort Relief

and Hanson violated FDUTPA through unfair methods of competition, unconscionable acts and practices, and unfair and deceptive practices in the conduct of trade or commerce that caused Plaintiffs damages.  Doc. 264 at 10-13.  The undersigned agrees.

As previously discussed, Plaintiffs allege in the Complaint that Resort Relief intentionally used false and misleading advertising to induce Plaintiffs' clients into paying large upfront fees to retain Castle Law for the purpose of exiting their timeshare agreements with Plaintiffs; that Castle Law, without prior investigation or any legitimate grounds for doing so, instructed Plaintiffs' clients to stop making their mortgage, maintenance, and tax payments owed to Plaintiffs; that as a result of Resort Relief's actions, Plaintiffs' clients have terminated, or have sought to terminate, their contractual relationships with Plaintiffs, thereby damaging Plaintiffs; that Plaintiffs clients were placed into default as a result of Resort Relief's actions; and that Resort Relief did not have any justification or privilege for the interference with Plaintiffs' contractual relationships.  Doc. 215 at ¶¶ 50, 53-55, 65, 69-71, 84-86, 95-103, 105-06, 112, 117, 119-23, 160-66, 170, 172-73.  In addition, Plaintiffs allege that Hanson created Resort Relief to use as subterfuge for the scam described *supra*, used Resort Relief to interfere with Plaintiffs' contractual relationships, actively participated in and controlled Resort Relief's activities, and acted maliciously and purposefully. *Id*. at ¶¶ 71, 73-74, 162-63.

Given the foregoing well-pled factual allegations, which the undersigned must accept as true solely for the purposes of this Motion, the undersigned finds that Resort Relief and Hanson were engaged in trade or commerce, engaged in deceptive acts or unfair practices, and caused actual damages to Plaintiffs.  *See Al Amjad Ltd. v. Ocean Marine Engines, LLC*, 2017 WL 1365580, at *4 (M.D. Fla. Apr. 14, 2017) (stating that "[a]n act or practice is deceptive if likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment" and is

unfair "if it causes consumer injury that is substantial, not outweighed by any countervailing benefits to consumers or competition, and one that consumers themselves could not have reasonably avoided") (citation and internal quotations omitted). The undersigned notes that this Court has previously found that FDUTPA protections are not limited to consumers. *Orange Lake Country Club, Inc. v. Castle Law Group, P.C.*, Case No. 6:17-cv-1044-Orl-31DCI, Doc. 177 at 10-11; *see also, e.g.*, *Gov't Employees Ins. Co. v. Clear Vision Windshield Repair, L.L.C.*, 2017 WL 1196438, at *3 (M.D. Fla. Mar. 29, 2017) (noting that the Florida legislature broadened FDUTPA to give standing to any person affected by a violation of FDUTPA and capable of proving the remaining elements of the claim) (citations omitted). Further, this Court has found in a similar case that allegations that an individual defendant was one of the "masterminds" of the deceptive advertising scheme supported the sufficiency of the FDUTPA claim against him in the context of a motion to dismiss, despite plaintiffs not alleging that the individual defendant himself created any of the deceptive ads or directly convinced any timeshare owners to stop making payments. *See Orange Lake Country Club, Inc. v. Castle Law Group, P.C.*, Case No. 6:17-cv-1044-Orl-31DCI, Doc. 177 at 11.

Accordingly, the undersigned finds that well-pled factual allegations in the Complaint establish that Resort Relief and Hanson violated FDUTPA. Therefore, the undersigned finds that Plaintiffs are entitled to default final judgment against Resort Relief and Hanson as to Count 3 of the Complaint.

### d. Count 4 – False Advertising and Unfair Competition Under the Lanham Act

The Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part that:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device,

or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

. . .

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).  The term "commercial advertising or promotion" includes "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a 'classic advertising campaign,' but may consist instead of more informal types of 'promotion,' the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Suntree Techs., Inc. v. Ecosense Intern., Inc.*, 693 F.3d 1338, 1349 (11th Cir. 2012) (citation omitted).  However, the U.S. Supreme Court has found that a plaintiff need not show that a defendant was in direct competition with the plaintiff to have standing under the Lanham Act. *Lexmark, Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 136 (2014); *see also Club Exploria, LLC v. Aaronson, Austin, P.A.*, 2019 WL 1297964, at *5 (M.D. Fla. Mar. 21, 2019) (noting in a similar case that the plaintiff need not be in direct competition with the defendant to bring a Lanham Act false advertising claim); *Orange Lake Country Club, Inc. v. Reed Hein & Assocs., LLC*, 2018 WL 5279135, at *8-9 (M.D. Fla. Oct. 24, 2018) (similar); *Westgate Resorts, Ltd. v. Reed Hein & Assocs., LLC*, 2018 WL 5279156, at *8-9 (M.D. Fla. Oct. 24, 2018) (similar); *Orange Lake Country Club, Inc. v. Castle Law Group, P.C.*, Case No. 6:17-cv-1044-Orl-31DCI, Doc. 177 at 14.

"To invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark*, 572 U.S. at 140.  "To prove that the [defendant's] statements caused the requisite injury, [the Eleventh Circuit Court of Appeals has] held that the plaintiff must show: (1) the ... statements were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) the plaintiff has been, or likely will be, injured as a result of the false or misleading statement." *Duty Free Americas, Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1277 (11th Cir. 2015) (citation and internal quotations and alterations omitted).  "Actionable false statements include (1) commercial claims that are literally false as a factual matter; and (2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or are likely to deceive consumers." *Orange Lake Country Club*, 2018 WL 5279135, at *8-9 (citation and internal quotations omitted).

Here, Plaintiffs allege in the Complaint that Resort Relief solicited Plaintiffs' clients through the use of website advertising and direct calls.  Doc. 215 at ¶¶ 50, 53-55, 65, 69-71, 84-86, 95-103, 105-06, 112, 117, 119-23, 181-95.  In doing so, Resort Relief intentionally used false and misleading statements in interstate commerce to induce Plaintiffs' clients into paying large upfront fees to retain Castle Law for the purpose of exiting their timeshare agreements with Plaintiffs.[4]  *Id.*  Castle Law then instructed Plaintiffs' clients, without prior investigation or any

---

[4] To reiterate, Plaintiffs allege that Resort Relief made various false or misleading statements to induce Plaintiffs' clients into breaching their contracts, such as guaranteeing that Resort Relief will relieve Plaintiffs' clients of their timeshare obligations and representing that Resort Relief has a 93 percent success rate.  Doc. 215 at ¶¶ 187, 192.

legitimate grounds for doing so, to stop making their mortgage, maintenance, and tax payments owed to Plaintiffs. *Id*. As a result, Plaintiffs' clients have terminated or sought to terminate their contractual relationships with Plaintiffs, thereby damaging Plaintiffs. *Id*.

The undersigned finds that the foregoing well-pled factual allegations, taken as true solely for purposes of the Motion, establish that Resort Relief violated the Lanham Act. Specifically, the well-pled factual allegations establish that Resort Relief engaged in commercial advertising and promotion that misrepresented the nature of Resort Relief's and Castle Law's commercial activities to Plaintiffs' detriment. Further, Plaintiffs' adequately allege that Resort Relief's statements were false or misleading; that Resort Relief's statements deceived or had the capacity to deceive Plaintiffs' clients; that the deception had a material effect on Plaintiffs' clients' decision to retain Resort Relief and Castle Law; that the misrepresentations affected interstate commerce; and that Plaintiffs have been injured as a result of Resort Relief's false or misleading statements. *See, e.g.*, Doc. 215 at ¶¶ 181-95; *see also Orange Lake Country Club*, 2018 WL 5279135, at *8-10 (denying in part the defendants' motion to dismiss the plaintiffs' Lanham Act claim in a similar case and noting that the plaintiffs' similar allegations in that case sufficiently alleged injuries flowing directly from the defendants' statements); *Westgate Resorts*, 2018 WL 5279156, at *8-10 (similar).

However, the undersigned finds that Plaintiffs have failed to demonstrate that the well-pled factual allegations establish that Hanson violated the Lanham Act. Plaintiffs do not allege that Hanson personally engaged in any advertising or promotion. Instead, Plaintiffs allege that Hanson created Resort Relief to use as subterfuge for the scam described *supra*, used Resort Relief to interfere with Plaintiffs' contractual relationships, and was necessarily involved in the marketing decisions of Resort Relief. Doc. 215 at ¶¶ 71, 73-74, 186. But Plaintiffs provided the Court with

no argument or authority to suggest that the foregoing is sufficient to demonstrate that Hanson engaged in false advertising and unfair competition under the Lanham Act.  Plaintiffs' failure to adequately brief the issue is especially problematic considering that Plaintiffs alleged a separate cause of action against other individual Defendants in this case for contributory false advertising and unfair competition under the Lanham Act for, which requires a plaintiff to show that a "third party in fact directly engaged in false advertising that injured the plaintiff" and "that the defendant contributed to that conduct either by knowingly inducing or causing the conduct, or by materially participating in it." *Duty Free Ams., Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1277 (11th Cir. 2015).  With that said, the undersigned makes no finding at this time regarding which cause of action would be appropriate in this case as to Hanson.  The undersigned finds only that Plaintiffs failed to adequately support the relief they requested.

Accordingly, the undersigned finds that well-pled factual allegations in the Complaint, accepted as true solely for purposes of the Motion, establish that Resort Relief violated the Lanham Act.  Therefore, the undersigned finds that Plaintiffs are entitled to default final judgment against Resort Relief as to Count 4 of the Complaint.  With regard to Hanson, the undersigned finds that Plaintiffs failed to adequately establish that they are entitled to the relief requested, and, therefore, that the Motion should be denied to the extent Plaintiffs seek default final judgment against Hanson as to Count 4 of the Complaint.

### E. Relief

Plaintiffs ask the Court to award actual damages, enter a permanent injunction, and award attorney fees and costs.  The undersigned will address each in turn.

### a.  Actual Damages

Plaintiffs request a total of $1,161,335.50 in damages.  But Plaintiffs provided the Court with no argument in the Motion to establish why they are entitled to this amount of damages. Instead, Plaintiffs relied solely upon the declaration of John Willman, Treasurer and Vice-President of Mortgage Services a Plaintiff Westgate Resorts, Ltd.  Docs. 264 at 20-22; 266.  Mr. Willman declared that he calculated Plaintiffs' damages by summing the total outstanding balance due for all client accounts that went into default "within the three months immediately prior to Plaintiffs' receipt of a letter of representation from Castle Law or any time thereafter." [5]  *See* Doc. 266.

The undersigned finds the foregoing analysis by Mr. Willman speculative and insufficient. Indeed, Plaintiffs failed to provide the Court with any information or statistical analysis with which the Court could determine which client accounts defaulted as a result of Defendants' actions.[6]

---

[5] Mr. Willman explained that "based on counsel's review of documents produced by Defendants," a three-month delay between the date a client retained Castle Law and the date Plaintiffs received a letter of representation regarding that client from Castle Law was not atypical.  Doc. 266 at 3; *see also* Doc. 265 at 1-2 (declaration of Roy Taub generally explaining how Plaintiffs' counsel decided on using a three-month delay).  But Mr. Willman did not provide the Court with any specific information regarding how the 90-day period was actually calculated or how the data supports such a general statement.  Mr. Willman's statement that a three-month delay was not "atypical" provides the Court with no information regarding the number of clients upon which that statement was based, or how wide the variance was between clients.  For instance, if Mr. Willman's statement was based upon Plaintiffs' counsel's review of ten client accounts, and that review indicated that there was a three-month or longer delay for four of those clients and only a one-month delay for the rest, would that suffice to say that a three-month delay was not "atypical?" And would a determination based on the review of only ten client accounts suffice to make a broad generalization as to the 230 client accounts that Mr. Willman claims went into default during the relevant timeframe?  In addition, the undersigned notes that in order for Plaintiffs' counsel to make such a calculation, Plaintiffs' counsel must have had the exact date of retention for at least some, if not many, of Castle Law's clients.  Which begs the question why a broad, speculative 90-day period was used in lieu of the actual date that these particular clients retained Castle Law.

[6] The undersigned notes that Plaintiffs allege that "the measure of damages is the same under each cause of action."  Doc. 264 at 21.  But Plaintiffs have not established that to be the case.  Plaintiffs

Instead, Plaintiffs seem to simply assume that every client that retained Castle Law defaulted because of Defendants' actions. But Plaintiffs provided the Court with no analysis to support that assumption.

Given the foregoing, the undersigned finds that Plaintiffs failed to carry their burden of demonstrating their entitlement to recover the amount of damages sought in the Motion, or any specifically determinable amount of damages. *See Wallace*, 247 F.R.D. at 681 (stating that the plaintiff has the burden of proving the amount of damages). However, the undersigned declines to recommend setting an evidentiary hearing at this time. Instead, the undersigned recommends that Plaintiffs be permitted to file a motion to quantify damages, to the extent that Plaintiffs seek monetary damages against Resort Relief and Hanson. Should Plaintiffs choose to file a motion to quantify damages, Plaintiffs should attach all evidence they have to establish their damages.

### b. Permanent Injunction

Plaintiffs seek a permanent injunction prohibiting Resort Relief and Hanson from engaging in the sort of false or misleading advertising alleged therein. Doc. 264 at 17-20. Specifically, in the Complaint, Plaintiffs seek the following injunctive relief:

 a. Enjoining Castle Law and Resort Relief, its officers, agents, servants, employees, and attorneys and those persons in active concert or participation with them from engaging in false advertising; and engaging in deceptive, misleading, and unfair trade practices relating to Plaintiffs.

 b. Requiring Castle Law and Resort Relief to take down and destroy all false, misleading, and deceptive material relating to Plaintiffs found on Castle Law's

---

appear to seek to hold Resort Relief and Hanson liable for the damages caused by all Defendants. However, aside from Plaintiffs' cause of action for civil conspiracy, Plaintiffs failed to provide the Court with any authority to suggest that Resort Relief and Hanson can be held liable for damages caused by the other Defendants with respect to Plaintiffs' other causes of action. And Plaintiffs failed to provide the Court with any information with which the Court could determine which of Castle Law's clients were induced to default on their contracts as a result of Resort Relief's and Hanson's actions as opposed to, for instance, Castle Law's actions.

and Resort Relief's websites and found in any marketing material or documentation Castle Law and Resort Relief produces or is using;

c.  Directing Castle Law and Resort Relief to file with this Court and serve on Plaintiffs within fifteen days after the service of an injunction, a report, in writing under oath, setting forth in detail the manner and form in which Castle Law and Resort Relief have complied with the injunction; and

d.  Requiring Castle Law and Resort Relief to provide notice of such injunction by posting the Order on Castle Law's and Resort Relief's website.

Doc. 215 at 56-57.  But the foregoing relief is not consistent with the relief Plaintiffs now seek in the Motion.  *See* Docs. 264 at 23; 264-1.

In the Motion and the proposed order attached thereto, Plaintiffs ask the Court to enjoin Resort Relief and Hanson from the following:

a.  communicating with or assisting others in communicating with individuals having timeshare interests or contracts with any of the Plaintiffs;

b.  making any statement or representation about or relating to Plaintiffs;

c.  interfering or assisting others in their interference with Plaintiffs' contractual relationships;

d.  providing or assisting others in providing any product, service, plan, or program represented, expressly or by implication, to rescind or terminate a timeshare owner's timeshare interest, promissory note, mortgage, mortgage payments, maintenance fees, and any related contracts ("Timeshare Exit Services") to individuals having timeshare interests or contracts with any of the Plaintiffs; or

e.  referring any individuals having timeshare interests or contracts with any of the Plaintiffs to other persons involved in Timeshare Exit Services.

*See* Docs. 264 at 23; 264-1 at 3.  This requested injunction far exceeds the scope of the injunction Plaintiffs requested in the Complaint.  Indeed, Plaintiffs' requested injunction does not appear to be limited in any way to the allegations of false and misleading advertising upon which Plaintiffs based their Complaint.  Instead, Plaintiffs appear to ask the Court to simply prohibit Resort Relief and Hanson from conducting business with any of Plaintiffs' clients, regardless of whether or not

those clients were induced to retain Resort Relief through the use of false or misleading advertising. But the undersigned finds that granting such relief would violate Resort Relief's and Hanson's right to due process. *See Grant v. Pottinger-Gibson*, 725 Fed. App'x. 772, 774 (11th Cir. 2018) ("A judgment is void under Rule 60(b)(4) only if the district court lacked subject matter jurisdiction or if the judgment was premised on a due process violation '*that deprive[d] a party of notice or the opportunity to be heard.*'") (citing *U.S. Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010)) (per curiam) (emphasis added). Specifically, the undersigned finds that the allegations and causes of action in the Complaint, which appear to be based entirely upon Resort Relief's and Hanson's alleged use of false or misleading advertising, did not give adequate notice to Resort Relief and Hanson that Plaintiffs would seek to broadly enjoin Resort Relief and Hanson from providing *any* timeshare exit services to Plaintiffs' clients, and, therefore, that Resort Relief and Hanson have not had notice and an opportunity to be heard in relation to such relief.

In addition, the undersigned finds that Plaintiffs have not carried their burden of establishing that they are entitled to the requested injunctive relief. "Under traditional equitable principles, a plaintiff seeking a permanent injunction must demonstrate (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction." *Angel Flight of Ga. Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008). Here, Plaintiffs have not established that they suffered an irreparable injury or that remedies available at law are inadequate to compensate for that injury. Indeed, Plaintiffs offered the Court nothing but conclusory statements to suggest that the harm – which appears, at

least ostensibly, to be monetary – was irreparable.[7]  *See* Doc. 264 at 17-20.  And to the extent that Plaintiffs were seeking to rely on the alleged harm to their reputation to establish that they suffered irreparable injury and that remedies available at law are inadequate, the undersigned notes that this Court previously found that the third amended complaint failed to adequately allege harm to Plaintiffs' reputation because "none of the cited advertising states that the Plaintiffs are engaged in unlawful or illegal conduct."  *See* Doc. 176; *Orange Lake Country Club, Inc. v. Castle Law Group, P.C.*, Case No. 6:17-cv-1044-Orl-31DCI, Doc. 177at 15.  The undersigned finds the same here.  Although the Complaint does contain some conclusory statements that Resort Relief and Hanson "purposefully tarnished Plaintiffs' business reputations and images with their false advertising," none of the advertising that Plaintiffs specifically cited in the Complaint appears to state that Plaintiffs were engaged in unlawful or illegal conduct.  Doc. 215 at ¶ 183.  And despite being aware of this Court's prior ruling with respect to whether Plaintiffs had adequately alleged injury to their reputation, Plaintiffs failed to cite to any well-pled factual allegations from the Complaint that would support Plaintiffs' conclusory assertion that they suffered damage to their reputation, or otherwise argue why the undersigned should find differently here.

With respect to the remaining factors, Plaintiffs failed to demonstrate that the requested remedy is warranted based on the balance of hardships or that the public interest would not be disserved by the permanent injunction.  Plaintiffs premised their arguments with regard to the balance of hardships and public interest on the fact that Resort Relief and Hanson have no legitimate interest in unlawful conduct and that the public is disserved by allowing Resort Relief and Hanson to continue to mislead consumers.  But, as previously noted, Plaintiffs' proposed

[7] To the extent Plaintiffs may have been tacitly arguing that the continuing nature of the harm renders it irreparable, Plaintiffs failed to cite authority to that effect or otherwise adequately brief the issue.

injunction goes far beyond preventing Resort Relief and Hanson from engaging in the conduct complained of in the Complaint.  And Plaintiffs failed to argue that the balance of hardships and the public interest support enjoining Resort Relief and Hanson from conducting business with any of Plaintiffs' clients, regardless of whether or not those clients were induced to retain Resort Relief through the use of false or misleading advertising

Given the foregoing, the undersigned finds that Plaintiffs failed to carry their burden of demonstrating their entitlement to the requested injunctive relief.  However, the undersigned finds that Plaintiffs should be permitted to seek to renew their request for a permanent injunction, to the extent that Plaintiffs wish to do so.

### c.   Attorney Fees and Costs

Plaintiffs seek an award of attorney fees and costs totaling $50,396.79.  Doc. 264 at 23. For the reasons set forth in detail in the paragraphs that follow, the undersigned respectfully recommends that the Court award Plaintiffs attorney fees in the amount of $35,520.51 and costs in the amount of $530.00.

### i.  *Entitlement to an Award of Attorney Fees*

Plaintiffs claim entitlement to attorney fees and costs pursuant to FDUTPA.[8]  Doc. 264 at 23.  Under FDUTPA, a plaintiff may recover "attorney's fees and court costs as provided in [section] 501.2105," which provides that "[i]n any civil litigation resulting from an act or practice involving a violation of this part, except as provided in subsection (5), the prevailing party, after

---

[8] Plaintiffs also claim entitlement to attorney fees and costs pursuant to the Lanham Act, which provides for an award of attorney fees in "exceptional cases."  Doc. 264 at 23; 15 U.S.C. § 1117(a); *Hong Tran v. Thu Thi Dinh*, 2012 WL 13136863, at *7-8 (M.D. Fla. Jan. 5, 2012) (discussing the standard for awarding attorney fees under the Lanham Act), *report and recommendation adopted*, 2012 WL 13137052 (M.D. Fla. Jan. 26, 2010).  But the undersigned need not address whether this was an "exceptional case" under the Lanham Act because, as will be discussed, Plaintiffs are entitled to attorney fees pursuant to FDUTPA.

judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party."  Fla. Stat. §§ 501.211(2), 501.2105(1).  Here, Plaintiffs are the prevailing party in a civil litigation resulting from an act or practice involving a violation of FDUTPA.  Therefore, the undersigned finds that Plaintiffs are entitled to their reasonable attorney fees and costs pursuant to FDUTPA.

### ii.  *Amount of Attorney Fees*

The Court uses the familiar "lodestar" method in determining a reasonable fee award, which is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The party moving for fees has the burden of establishing that the hourly rates and hours expended are reasonable.  *See Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

"[A] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (quotations and citation omitted).  In determining if the requested rate is reasonable, the Court may consider the applicable *Johnson* factors and may rely on its own knowledge and experience.  *Norman*, 836 F.2d at 1299-1300, 1303 ("The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.") (quotations and citation omitted); *see Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[9]  "The

---

[9] The *Johnson* factors are: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal services properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and

applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates," which must be more than just "the affidavit of the attorney performing the work." *Norman*, 836 F.2d at 1299 (citations omitted).  Instead, satisfactory evidence generally includes evidence of the rates charged by lawyers in similar circumstances or opinion evidence of reasonable rates.  *Id*.

As for the hours reasonably expended, counsel must exercise proper "billing judgment" and exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.  In demonstrating that their hours are reasonable, counsel "should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303.  Likewise, a party opposing a fee application should also submit objections and proof that are specific and reasonably precise. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999).  A fee opponent's failure to explain with specificity the particular hours viewed as "unnecessary or duplicative" is generally fatal. *Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1333 (M.D. Fla. 2002) (citing *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387 (11th Cir. 1997)).  "If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise

---

the ability of the attorney; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.  The Eleventh Circuit has subsequently explained that "district courts may, but are not required to, consider [the *Johnson*] factors since many 'usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.'" *Mock v. Bell Helicopter Textron, Inc.*, 456 F. App'x 799, 801 (11th Cir. 2012) (quoting *ADA v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 n.1 (11th Cir. 2006)).

unnecessary." *Barnes*, 168 F.3d at 428 (quotations omitted).  But in cases where the fee motion and supporting documents are voluminous, an hour-by-hour analysis by the court is not required, and the court may apply across-the-board percentage cuts in the number of hours so long as the court provides a concise but clear explanation of its reasons for the reduction.  *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994).  There is a strong presumption that the lodestar figure is reasonable.  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553-54 (2010).

### 1.  *Reasonably Hourly Rate*

Plaintiffs seek the following hourly rates for the attorneys that spent time on this case: $475 for Michael E. Marder, $400 for Richard W. Epstein, $375 for Jeffrey A. Backman, $375 for Kathryn G. Saft, $300 for Brent Kimball, $275 for Thu Pham, $225 for Roy Taub, $225 for Christina Guzman, $165 for Olivia Share, and $165 for Gregg Strock.  Doc. 265 at 12.  In support of these hourly rates, Plaintiffs provided the Court with the declaration of Mr. Taub.  But as the undersigned previously noted, "[t]he applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates," which must be more than just "the affidavit of the attorney performing the work."  *Norman*, 836 F.2d at 1299 (citations omitted). And Plaintiffs failed to provide the Court with any other support for the requested hourly rates, such as a legal memorandum, evidence of rates charged by other attorneys, or expert affidavits. Therefore, the undersigned finds that Plaintiffs failed to carry their burden of demonstrating that the requested rates are in line with the market rates.

Nevertheless, because the Court may rely on its own knowledge and experience, the undersigned finds that additional briefing is not necessary in this case.  Based on the undersigned knowledge and experience, and considering the nature of this case and the fact that the Motion is unopposed, the undersigned finds that the following hourly rates are reasonable in this case: $425

for Michael E. Marder, $400 for Richard W. Epstein, $375 for Jeffrey A. Backman, $350 for Kathryn G. Saft, $300 for Brent Kimball, $275 for Thu Pham, $225 for Roy Taub, and $225 for Christina Guzman.[10]  The undersigned notes that the foregoing hourly rates are similar to what Plaintiffs' counsel requested and was awarded in a similar case.  *See Orange Lake Country Club, Inc. v. Reed Hein & Assocs., LLC*, 6:17-cv-1542-Orl-31DCI, Docs. 110; 145; 212; 228; *see also Orange Lake Country Club, Inc. v. Castle Law Group, P.C.*, Case No. 6:17-cv-1044-Orl-31DCI, Doc. 275 (report recommending that the Court award similar rates in a similar case).  With that said, the undersigned declines to recommend awarding fees for the hours billed by Ms. Share and Mr. Strock.  According to Mr. Taub's declaration, Plaintiffs seek to recover attorney fees for the time that Ms. Share and Mr. Strock billed as summer associate law clerks.  Doc. 265 at 11.  But Plaintiffs failed to provide the Court with any argument or authority to suggest that it is appropriate to transfer a summer associate law clerk's attorney fees to an opposing party.  Thus, Plaintiffs failed to carry their burden of demonstrating that Ms. Share's and Mr. Strock's attorney fees are recoverable.

## 2. *Hours Expended*

Given that this case involved multiple Defendants, and, thus, that not all hours expended in this case were expended in relation to Resort Relief and Hanson, Plaintiffs only seek to recover the hours Plaintiffs' counsel spent on specific tasks.  Specifically, Plaintiffs seek to recover the hours Plaintiffs' counsel spent on the following tasks: (1) performing preliminary research,

---

[10] The undersigned recently recommended higher hourly rates for some of these attorneys in a similar case.  *See Orange Lake Country Club, Inc. v. Castle Law Group, P.C.*, Case No. 6:17-cv-1044-Orl-31DCI, Doc. 275.  However, in this case, these attorneys requested a lower hourly rate than they did in *Orange Lake Country Club*.  *Compare* Doc. 265 at 12, *with Orange Lake Country Club, Inc. v. Castle Law Group, P.C.*, Case No. 6:17-cv-1044-Orl-31DCI, Doc. 270 at 10.  But, in this case, Plaintiffs requested lower rates for these attorneys.

drafting the initial complaint, reviewing documents, and communicating with Plaintiffs' affected owners; (2) responding to an order to show cause regarding jurisdiction and drafting an amended complaint; (3) reviewing the Court's order to dismiss the second amended complaint and drafting the third amended complaint; (4) drafting the fourth amended complaint; (5) preparing for and attending mediation; (6) responding to Resort Relief's and Hanson's motion to dismiss the third amended complaint; (7) filing motions to compel against Resort Relief and Hanson and attending hearings on those motions to compel; (8) conferring with Resort Relief's and Hanson's counsel regarding discovery deficiencies and reviewing documents produced by Resort Relief and Hanson in discovery; and (9) responding to the Court's order to show cause why the Complaint should not be dismissed as to Hanson for Plaintiffs' failure to prosecute and preparing motions for entry of default. Doc. 265 at 3-11. Further, because some of the foregoing tasks related to all Defendants and not just Resort Relief and Hanson, Plaintiffs only seek to recover 25 percent of the time Plaintiffs' counsel spent on tasks not solely related to Resort Relief and Hanson.[11]

The undersigned has reviewed the time that Plaintiffs seek to recover and finds that the hours requested are reasonable with some exceptions. Specifically, the undersigned finds that the hours billed by Ms. Share and Mr. Strock are not reasonable for the reasons previously stated. In

---

[11] In actuality, Plaintiffs seek to recover 37.5 percent of the time spent. Doc. 265 at 3. However, Plaintiffs' calculation was based upon Plaintiffs' request to recover attorney fees against Castle Marketing, Resort Relief, and Hanson. Plaintiffs determined that because Castle Marketing, Resort Relief, and Hanson together made up 37.5 percent of the eight Defendants in this case, Plaintiffs should be able to recover 37.5 percent of the hours Plaintiffs' counsel spent on tasks that applied to all Defendants. The undersigned accepts as reasonable Plaintiffs' method for calculating the attorney fees that Plaintiffs may recover against Castle Marketing, Resort Relief, and Hanson for tasks that were performed as to all Defendants; however, because the undersigned does not find that Plaintiffs are entitled to default judgment or attorney fees against Castle Marketing at this time, the undersigned finds that Plaintiffs' request for 37.5 percent of the time spent should be cut to 25 percent to account for the fact that at this time, attorney fees are only being awarded against Resort Relief and Hanson, and not Castle Marketing.

addition, Plaintiffs have not demonstrated why they should be permitted to recover for time spent responding to the Court's order to show cause why the Complaint should not be dismissed as to Hanson for Plaintiffs' failure to prosecute.  *See* Doc. 247.  Indeed, this time appears to have been spent as a result of Plaintiffs failure to prosecute their case, and not as a result of any actions taken by Hanson.  Therefore, because the motion for entry of default as to Hanson is essentially a boilerplate motion of only two pages, the undersigned will disallow all but 1.5 hours for task (9).  *See* Doc. 254.  Thus, accounting for the foregoing reductions and adjusting for the percentage reduction in time discussed *supra*, the undersigned calculates a lodestar of $35,520.51 as follows:

| | Rate | Hours | | |
|---|---|---|---|---|
| Michael E. Marder | $425.00 | 0.125 | | $53.13 |
| Richard W. Epstein | $400.00 | 13.85 | | $5,540.00 |
| Jeffrey A. Backman | $375.00 | 7.125 | | $2,671.88 |
| Roy Taub | $225.00 | 41.02 | | $9,229.50 |
| Kathryn G. Saft | $350.00 | 4.8 | | $1,680.00 |
| Brent Kimball | $300.00 | 2.07 | | $621.00 |
| Christina Guzman | $225.00 | 12.86 | | $2,893.50 |
| Thu Pham | $275.00 | 46.66 | | $12,831.50 |
| | | | **Total:** | **$35,520.51** |

However, the undersigned notes that the Court previously awarded attorney fees to Plaintiffs for the time Plaintiffs' counsel spent on motions to compel against Resort Relief and Hanson.  *See* Doc. 206.  The undersigned cautions Plaintiffs that to the extent this Court has previously awarded Plaintiffs any attorney fees in this case, Plaintiffs are not permitted to recover those fees twice.

### iii. *Costs*

Plaintiffs seek to recover $1,426.25 in costs: $400.00 for the filing fee, $291.65 for service of process on Resort Relief, $367.10 for service of process on Hanson, and $367.50 for service of process on Castle Marketing.  Docs. 264 at 23; 265 at 12-13.  In support of their request, Plaintiffs attached to Mr. Taub's declaration a copy of the check used to pay the filing fee and the invoices for service of process upon Resort Relief, Hanson, and Castle Marketing.  Doc. 265-2.

Federal Rule of Civil Procedure 54(d)(1) allows for an award of costs for a prevailing party unless a federal statute, the Federal Rules of Civil Procedure, or a court order provides otherwise. *See Durden v. Citicorp Trust Bank, FSB*, Case No. 3:07-cv-974-J-34JRK, 2010 WL 2105921, at *1 (M.D. Fla. Apr. 26, 2010) (stating that Rule 54 establishes a presumption that costs should be awarded unless the district court decides otherwise) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1038 (11th Cir. 2000)).  Generally, a district court may not award costs under Rule 54 "in excess of those permitted by Congress under 28 U.S.C. § 1920."  *Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1225 (11th Cir. 2002) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987)).  The party seeking costs must provide sufficient detail and documentation regarding the requested costs so that the opposing party may challenge the costs and so the court may conduct a meaningful review of the costs.  *Lee v. Am. Eagle Airlines, Inc.*, 93 F. Supp. 2d 1322, 1335-36 (S.D. Fla. 2000).  Failure to provide sufficient detail or supporting documentation verifying the costs incurred and the services rendered can be grounds for denial of costs.  *Pelc v. Nowak*, Case No. 8:11-cv-79-T-17TGW, 2013 WL 3771233, at *5 (M.D. Fla. July 17, 2013) (citing *Johnson v. Mortham*, 173 F.R.D. 313, 318 (N.D. Fla. 1997)).

The undersigned finds that Plaintiffs provided sufficient supporting documentation to verify their costs and that the costs Plaintiffs seek are permitted under 28 U.S.C. § 1920.  However,

"[i]t is well settled that costs for having a private process server serve . . . subpoenas are compensable to the extent the private process server's fees are limited to the fees authorized in 28 U.S.C. § 1921." *Magaldi v. Safeco Ins. Co. of Am.*, 2009 WL 1851102, at * 6 (S.D. Fla. June 29, 2009) (citing *EEOC v. W & O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000)). The statutorily authorized fee for § 1921 is set forth in 28 C.F.R. § 0.114, which provides that the U.S. Marshals Service is authorized to collect $65.00 per hour for service of process, plus travel costs and any other out-of-pocket expenses. 28 C.F.R. § 0.114(a)(3) (2013).  Here, Plaintiffs failed to provide the Court with any argument or authority to suggest that Plaintiffs should be permitted to collect in excess of $65.00 for service of process.[12]  The undersigned notes that the invoices do indicate other charges, such as rush fees and multiple attempts at service, but absent some briefing as to why such additional fees are appropriate the undersigned declines to recommend that they be awarded.  In addition, Plaintiffs failed to brief the Court as to why they should be permitted to recoup the fees they incurred serving process on Castle Marketing.

Given the foregoing, the undersigned finds that costs should be taxed against Resort Relief in the amount of $530.00.

## IV.    Conclusion

Accordingly, it is respectfully **RECOMMENDED** that:

1.   The Motion (Doc. 264) be **GRANTED in part**;

2.   The Court enter final default judgment in favor of Plaintiffs and against Resort Relief on Counts 1 through 4 of the Fourth Amended Complaint (Doc. 215);

---

[12] In the Motion, Plaintiffs argue that they are entitled to attorney fees and costs under the Lanham Act and FDUTPA.  Doc. 264 at 23.  But Plaintiff failed to argue or provide any authority to suggest that the scope of costs under the Lanham Act or FDUTPA exceeds the scope of costs under Rule 54.

3.  The Court enter final default judgment in favor of Plaintiffs and against Hanson on Counts 1 through 3 of the Fourth Amended Complaint (Doc. 215);

4.  The Court award Plaintiffs $35,520.51 in attorney fees and $530.00 in costs against Resort Relief and Hanson;

5.  If this Recommendation is adopted, the Court provide Plaintiffs with 30 days to file a motion for permanent injunction and to quantify damages, and caution Plaintiffs that a failure to do so within the time provided will result in an abandonment of their request for damages and permanent injunction against Resort Relief and Hanson; and

6.  The Motion (Doc. 264) otherwise be **DENIED**.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on August 21, 2019.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy